UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

   -v-                                                                                                                                         No.  16-CR-826-LTS

DENNIS POMALES,

          Defendant.

-------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

The Court has received Defendant Dennis Pomales's <u>pro se</u> motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Docket Entry No. 496, the "Motion.")  On June 26, 2018, upon pleading guilty, Mr. Pomales was convicted of one count of conspiracy to distribute and possess with the intent to distribute narcotics, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846.  (Docket Entry No. 196.)  On January 8, 2019, the Court sentenced him principally to 120 months of imprisonment, to be followed by a five-year supervised release term.  (Docket Entry No. 272.)  Mr. Pomales is currently incarcerated at the Federal Correctional Institution ("FCI") Berlin (a medium security correctional facility in New Hampshire), and is due to be released from Bureau of Prisons ("BOP") custody on August 15, 2025.  (Motion at 3; Docket Entry No. 499 ("Opp.") at 5; BOP, <u>Find an inmate</u>, https://www.bop.gov/inmateloc/ (last visited August 12, 2020).)

Mr. Pomales seeks immediate release to supervised release, arguing that his medical conditions (including asthma and psoriasis) put him at a high risk of contracting severe illness related to COVID-19, and therefore constitute "extraordinary and compelling reasons" to reduce his sentence.  (Motion at 1-2; Docket Entry No. 502 ("Reply") at 1-3.)  On July 16, 2020, the Government filed its opposition to the Motion.  Mr. Pomales filed his reply on August 4,

2020.  The Court has reviewed the parties' submissions carefully and, for the following reasons, Mr. Pomales's Motion is denied.

### DISCUSSION

Mr. Pomales seeks an order directing his compassionate release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part, that:

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C.A. § 3582(c)(1)(A) (Westlaw through P.L. 116-152).[1] The applicable policy statement provides that extraordinary and compelling reasons may exist if:

> the defendant is . . . suffering from a serious physical or medical condition, or . . . experiencing deteriorating physical . . . health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

See U.S.S.G. 1B1.13 and cmt. N.1. (A)(ii)(I), 1(A)(ii)(III) (U.S. Sentencing Comm'n 2018).[2] The applicable policy statement also requires the Court to determine that "[t]he defendant is not a danger to the safety of any other person or the community, as provided in 18 U.S.C.

---

[1] The Government does not dispute that Mr. Pomales has satisfied Section 3582(c)(1)(A)'s exhaustion requirement.  (See Opp. at 2.)

[2] Section 1B1.13 is a policy statement governing "reduction in term of imprisonment under 18 U.S.C. § 3582(c)(1)(A)."  U.S.S.G. § 1B1.13.

§ 3142(g)," before reducing a term of imprisonment under Section 3582(c)(1)(A).  U.S.S.G. § 1B1.13(2).  "The defendant has the burden to show he is entitled to a sentence reduction" under Section 3582(c)(1)(A).  United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

Mr. Pomales, who is 42 years old, claims principally that his medical conditions of asthma and psoriasis place him at a heightened risk of severe illness from COVID-19, and therefore constitute extraordinary and compelling reasons which warrant a reduction in his sentence.[3]  Mr. Pomales reports, and his medical records confirm, that he has a history of asthma since childhood, which he treats with the inhaler Albuterol.  (Motion at 1; Opp. at 4; Reply at 1-2; Medical Records at 7, 33, 134.)[4]  According to Mr. Pomales, his asthma condition is worsening, though he acknowledges that he "control[s] it with [his] inhaler" and has "learned preventative measures" to avoid asthma attacks.  (Reply at 3.)  He has no history of intubation or hospitalization on account of his asthma.  (Medical Records at 7, 33, 134.)  Mr. Pomales also reports, and his medical records confirm, a deterioration in his psoriasis, which he treats with rotating topical creams and ointments.  He claims that he recently "complained that [his] medication wasn't working" to his physician, who told him that he was "on the strongest topical

---

[3]     Mr. Pomales also notes that he has "heard that most Americans from the north are vitamin D deficient which causes respiratory problems" (Motion at 1), and, on reply, that he has "high cholesterol and triglycerides."  (Reply at 3.)  He does not argue that any of these circumstances places him at a heightened risk of severe illness from COVID-19, and the Court has located no authority for that proposition.  Cf. United States v. Martinez, No. 13-CR-699 (PAE), 2020 WL 3034808, at *2 (S.D.N.Y. June 5, 2020) ("the Government notes, and Mr. Martinez does not refute, the CDC does not consider high cholesterol to be a risk factor" for severe illness resulting from COVID-19).

[4]     The Court will file Mr. Pomales's detailed medical records, which the Government submitted directly to chambers with a copy to Mr. Pomales, under seal.

medications and because of COVID-19 she wouldn't recommend" oral or injectable medications, such as Humira, Taltz, or Otezla. (Reply at 2.)

The Court concludes that Mr. Pomales's medical condition does not amount to an "extraordinary and compelling" reason justifying a reduction in his sentence. The Centers for Disease Control and Prevention ("CDC") has identified "moderate to severe" asthma as a condition that "may" place individuals at a higher risk of severe illness from COVID-19. CDC, Coronavirus Disease 2019 (COVID-19), People with Moderate to Severe Asthma, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited August 12, 2020). The CDC explains that the evidence on this question is "mixed," meaning that "multiple studies . . . reached different conclusions about risk associated" with asthma. CDC, Evidence used to update the list of underlying medical conditions that increase a person's risk of severe illness from COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last visited August 12, 2020).[5] Moreover, while the severity of Mr. Pomales's asthma fluctuates and the frequency of his use of Albuterol varies from once a week or less to several times per week or more (see Medical Records at 7, 33, 134), he has generally been able to manage his condition with his inhaler and other preventative measures (Reply at 3), and he has never been hospitalized or intubated on account of his asthma. These facts weigh against a finding of "extraordinary and compelling" reasons. See also United States

---

[5] Compare, e.g., Rutgers University, Asthma Does Not Seem to Increase the Severity of COVID-19, https://www.rutgers.edu/news/asthma-does-not-seem-increase-severity-covid-19 (last visited August 12, 2020) with Harvard School of Public Health, Non-allergic asthma linked with increased risk of severe COVID-19, https://www.hsph.harvard.edu/news/features/non-allergic-asthma-linked-with-increased-risk-of-severe-covid-19/ (last visited August 12, 2020) (explaining that researchers found that "non-allergic asthma increased the risk of severe COVID-19 by as much as 48%," though "people with allergic asthma had no statistically significant association with severe COVID-19").

v. Christie, No. 15-CR-288 (RMB), 2020 WL 3969962, at *2 (S.D.N.Y. July 14, 2020) ("Although [Christie] has been diagnosed with asthma, his medical records . . . demonstrate that his asthma is well-controlled . . . [a]ccordingly, [Christie] has not carried his burden of demonstrating 'extraordinary and compelling reasons' justifying release." (quoting U.S. v. Frazier, 90-CR-913 (LAP), 2020 WL 3508261, at *2 (S.D.N.Y. June 29, 2020)); United States v. Alvarez, No. 11-CR-169 (VB), 2020 WL 3640523, at *2 (S.D.N.Y. July 6, 2020) ("Alvarez points to other cases in which courts in this district have found 'extraordinary and compelling' circumstances warranting release based upon a respiratory ailment like asthma. . . . However, every case is unique, and the comparison to these cases fails to persuade.").

Mr. Pomales's other principal medical condition, psoriasis, is not among those conditions the CDC reports may increase a person's risk of severe illness from COVID-19. It is true that this Court has recognized that some *treatments* of psoriasis may create such a risk. See United States v. Chappell, No. 16-CR-512 (LTS), 2020 WL 3415229, at *1 (S.D.N.Y. June 22, 2020) ("Mr. Chappell is being treated for advanced psoriasis with potent anti-tumor necrosis factor (anti-TNF) immunosuppressive therapies (Adalimumab [also known as Humira] and/or Etanercept) that compromise his immune system and undermine his ability to fight off a viral infection, including COVID-19."). However, while Mr. Pomales claims on reply that he discussed one or more of these medications with his physician, who recommended against their use "because of COVID-19" (Reply at 2-3), the medical records do not reflect that advice, and Mr. Pomales is not on such immunosuppressant medication. Moreover, there is no indication in the record that such medication would be indicated for him even if he were on home confinement, given the pandemic conditions in the United States. The record does not demonstrate that Mr. Pomales's psoriasis is a condition that "substantially diminishes" his ability

"to provide self-care within the environment of a correctional facility" in the context of the COVID-19 pandemic or that his combination of medical conditions creates extraordinary and compelling circumstances warranting compassionate release. See U.S.S.G. 1B1.13 and cmt. N.1.(A)(ii)(I), 1(A)(ii)(III).

The Court also notes that FCI Berlin appears to pose comparatively less risk of COVID-19 infection as compared to certain other BOP facilities. According to the BOP, FCI Berlin has conducted 137 tests of inmates, yet only one inmate has tested positive for COVID-19. BOP, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited August 12, 2020). See also United States v. Felix, No. 12-CR-322 (RJS), 2020 WL 4505622, at *2 (S.D.N.Y. Aug. 4, 2020) (noting, in denying motion for compassionate release, that "[t]here now appears to be a single confirmed case of COVID-19 among the inmate population at [the defendant's facility], as well as two confirmed cases among the staff"). Moreover, Coos County, in which FCI Berlin is located, has reported only 17 total COVID-19 infections since March 2020 (with only one hospitalization), and currently reports only one positive case. New Hampshire Department of Health and Human Services, COVID-19 Summary Dashboard, https://www.nh.gov/covid19/dashboard/summary.htm (last visited August 12, 2020). The relative lack of positive COVID-19 cases in and around FCI Berlin, together with the steps the BOP is taking to counter the spread of COVID-19 in its facilities as a whole (see Opp. at 6), also weigh against a finding of extraordinary and compelling circumstances in this case.

Finally, Mr. Pomales is 42 years old, and thus is outside the age groups at the highest risk of severe illness from COVID-19. CDC, COVIDView, A Weekly Surveillance Summary of U.S. COVID-19 Activity, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html (last visited August 12, 2020). See also, e.g., Alvarez, 2020 WL

3640523, at *2 ("Alvarez is forty-four years old. He is neither elderly nor infirm. He has been diagnosed with, among other things, long-term bronchial asthma and hyperlipidemia. . . . There is no question Alvarez has health issues, but his health is stable and has been aided effectively by routine monitoring and medication."); United States v. Mascuzzio, No. 16-CR-576 (JFK), 2020 WL 3050549, at *3 (S.D.N.Y. June 8, 2020) ("Mascuzzio's age [40] and his asthma are not severe enough to warrant compassionate release."); United States v. Sessum, No. 15-CR-667 (KPF), 2020 WL 2836781, at *3 (S.D.N.Y. June 1, 2020) ("Mr. Sessum is 43 years old, which would otherwise place him at a comparatively low risk of hospitalization or death from COVID-19.").

The Court therefore concludes that Mr. Pomales's health conditions, while serious, do not present extraordinary and compelling reasons warranting a reduction of his sentence. The Court further finds that that the Section 3553(a) factors do not favor Mr. Pomales's release.[6] In particular, the Court notes that Mr. Pomales has served only 41 months of his 120-month custodial sentence, which was already a substantial variance below the applicable sentencing guidelines range of 188 to 235 months. (See Docket Entry No. 288 at 18:8-25:4.) Reduction of his sentence to time served would not "reflect the seriousness of the offense,"

---

[6] The sentencing factors set forth in 18 U.S.C. section 3553(a) are: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range . . . ; (5) any pertinent policy statement [issued by the Sentencing Commission in effect on the date the defendant is sentenced]; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." 18 U.S.C.A. § 3553(a) (Westlaw through P.L. 116-152).

"promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," or "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," especially in light of the applicable guidelines range. 18 U.S.C.A. § 3553(a)(2)(A)-(b), (a)(4), (a)(6).  Nor, although Mr. Pomales has strong family support and is clearly making a focused effort to pursue training and education that will eventually enable him to reenter the community as a positive and productive citizen, has Mr. Pomales persuaded the Court that he is no longer a danger to the community. His lengthy history of prior drug offenses, the quantities of narcotics involved and his role in the offense for which he is currently incarcerated, and his possession of a weapon in connection with his drug offense suggest a strong risk of further recidivism warranting continued custody for the protection of the public as well as to promote deterrence.

## CONCLUSION

For the reasons set forth above, Mr. Pomales's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) is denied.  An Order on Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) will also be entered.

Docket Entry No. 496 is resolved.

SO ORDERED.

Dated: New York, New York
August 12, 2020

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

**Copy mailed to:**

Dennis Pomales, Reg. No. 78694-054
FCI Berlin

Federal Correctional Institution
P.O. Box 9000
Berlin, NH 03570